We will now begin with case number 25-40401, U.S. v. Sanchez-Torres, and we'll begin with Gallagher. Sorry, I never know how to pronounce names. I'll let you pronounce your name. Yes, Your Honor. May it please the Court. Philip Gallagher for Ms. Nellie Sanchez-Torres. The Court should reverse the District Court's order denying the motion to suppress because the agents who stopped her SUV lacked reasonable suspicion to believe any occupant was involved in criminal activity. Now most importantly, the stop here occurred more than 50 miles from the border, and the agents had no reason to suspect that the trip had originated at the border. So as the court's case law has repeated for decades now, when a stop is remote from the border, the remaining factors that the Supreme Court set out in Brignone and Ponce must be remain, must be considered with caution or cherry, as the court sometimes says. So here, particularly when viewed with caution, those remaining factors are insufficient to justify the stop. Now the court went through all those factors and listed clearly the many that did not support any finding of reasonable suspicion here. In addition to the remoteness from the border, nothing about the traffic pattern suggested criminal activity, the experience of the agents was slight, the driver's behavior was not suspicious, and the aspects of the car, both its appearance in the area and its nature, didn't support any findings. Can I ask you something? It's my understanding that she's out of the prison and she is not a citizen of America. Is she still in America? No, you're right. Well then why is she even pursuing this? Because while I understand that if she was in America, she would have this and that, but if she's not part of America, then why is she even pursuing this? She's not in prison anymore, etc. Right, well it's not a challenge to the sentence, Your Honor, so it's a challenge to the underlying conviction. And if she succeeds on this appeal and the district court vacates this decision, her felony conviction for this will go away. And even though she is outside of the United States now, the court had sentenced her to time served and she was removed shortly afterwards. Any prospect of her returning legally to the United States is massively diminished by a felony conviction. Is that what she's trying to do, is come back legally? Legally, Your Honor. So she wants to have the felony out? Correct. Okay. It's just a felony. No, I know that, but I just was trying to figure out why she's gone, but it's because she wants to come back. Exactly. So as I said, most of the Brignoni-Pons factors do not support a finding reasonable suspicion in this case. The court identified three factors that found supported. Two are general to all vehicles in the area. One, that the area is known for alien smuggling, and two, that there had been evidence earlier that day of a group of about four to six people traveling through the brush. And in fact, the agents who stopped Ms. Sanchez-Torres' vehicle had been engaged in looking for those people earlier that day before they came upon Ms. Sanchez-Torres. You said there was evidence. You're talking about the clothes? Yes, Your Honor. All right. Yes. And you said, based on the clothing, they determined how many people? They estimated, based on their experience, that there was a group of about four to six people traveling through the brush. All right. And they hadn't found any. They said they looked, the estimates varied from between two to four hours before they traveled north and parked on the side of the road, which is when they saw Ms. Sanchez-Torres. But they hadn't found any of those people at that time. So we're not disputing that the court properly found there was some evidence of a group of about four to six people being in the area earlier that day. But the only factor that, the only factor the court found that's specific to this vehicle, Ms. Sanchez-Torres' vehicle, was the behavior of the passengers. And the court pointed to two things. One was that the two officers, from different perspectives, saw different numbers of people in the vehicle. So the one, the officers initially start following the vehicle. The lead officer, Agent Benavides, gets into the lane for oncoming traffic and pulls alongside Ms. Sanchez-Torres' car and radios back to Agent Lozano that she saw three, sorry, that she saw two people, two people in the front and a baby seat behind the driver. So on the side of the vehicle that she was driving alongside of. And then he immediately radios back and says, no negative, I see three in the vehicle. And then she says, oh, I didn't get to see that third person. So that's one factor, that one officer from behind sees three people, the officer from the side sees two. But of course the third person the officer behind sees is the person traveling in the rear passenger seat. So opposite the side of the vehicle that Agent Benavides was driving along at 50 plus miles per hour. And also there's a car seat on that side of the vehicle. So walking that way. And of course when Agent Lozano sees that person, that third person, he must be seeing the person with their head over the back seat. That's the only way you can see them from behind because he's traveling directly. He says he's about a car length, one and a half car lengths behind Ms. Sanchez-Torres' vehicle. So he sees that third person. And he also sees them with their hands. He says he sees them with their hands in the air playing with their hair, maybe playing with their hair. So not slouching, not ducking, none of that. And then the other factor that the court points to as the behavior of the passengers supporting suspicion is that hair thing, the arms in the air thing. As the court noted, as what I just said, that the third person has their hands in the air as if maybe playing with their hair. When he comes back to that at the end of the hearing when the court, when the district court is questioning him, then he adds in maybe playing with their hair or trying to avoid being seen. So and the court points to that as another factor of the behaviors. But that doesn't add to suspicion. It's suspicion if someone is trying to avoid being seen by the police. It doesn't follow that someone with their hands in their air, sorry, hands in the air, whether adjusting their hair or doing something else with their hands in the air, is trying to avoid detection by the trailing officer or the other officer who is essentially circling the vehicle as she's driving alongside. She drives alongside and drives around through the front and pulls over to the passenger side of the vehicle. So it's a factual finding that the third person had their hands in the air. I'm not disputing that. But that doesn't support reasonable suspicion. That is much more like the pointing at the landscape that was discussed in Olivares-Pacheco where this court reversed district court's decision denying a motion to suppress. The facts there were less, were more suspicious than here and even then the court reversed. And one of those factors was the agency pointed out that while they're coming up on this vehicle, they see one of the passengers point out at the landscape and the other passengers look at whatever the passenger is pointing at. And the officer surmised that, well, this is them trying to draw, the passengers trying to draw attention away from us. They're not going to look at us. But there are other factors there too that they had pointed out that's supporting suspicion. That it's also on an area known for trafficking, that the truck was dragging along a piece of brush as if it was coming from there. Well, with regards to the Bononi-Ponce factors, which one in this case do you agree points to reasonable suspicion? Is there any one of them that you would agree points to reasonable suspicion? Yes. I think I'm not disputing, I think the court properly found that the area is known for alien smuggling and I think the court properly found that there was evidence of a group traveling that day, earlier that day. But as to this specific vehicle, there is nothing supports a reasonable suspicion here on it. And the court even acknowledged, as I said, the court goes through all the factors quite thoroughly and only lists the one, the behavior of the passengers. Even there the court acknowledges that it slightly weighs in favor. And what I'm suggesting is that, again, look, in the practicalities of what's happening, even with officers, in light of officers with little experience, even making decisions on the fly, nothing was suspicious. It's not suspicious for officers to see different numbers of people inside a vehicle traveling along at 50 miles per hour, 50 plus miles per hour from different perspectives. And it's not suspicious for someone to have their hands in the air, whether touching their hair or doing something else while traveling along. That is perfectly innocent behavior that is completely consistent with what normal passengers do. So the totality of suspicion here is less than what the court found insufficient in Olivares Pacheco. It's less than what the court found insufficient in Rangel Portillo. And that's a case which the stop had in 500 yards or so from the border. And both in Olivares and Rangel, far more experienced agents. In Rangel, the agent had six years of experience. And, excuse me, in Olivares, I think it was 12 years and seven years experience. Whereas here they each had about 18 months. And the one agent made clear that he wasn't even familiar with the roads in the area. Agent Lozano said that when testifying. Where were the clothes found? The clothes were found on a ranch several miles south of where the agents initially saw the vehicle. So on a ranch off the road? Yes, Your Honor. And then they said that the agent said they've been, yes, going through the brush for between two to four hours earlier. So do you understand how clothes being found on a ranch off the road gets connected to a vehicle? I, well, I don't understand how it gets connected to this vehicle. But as far as the argument that they made that connected to the vehicle, or did they make any argument? They didn't make any argument that it was connected to this vehicle. It was just an argument that there was evidence of a group going through the brush in the general area that day. And so then the agent said that they've been told that by their, and I'm not, again, I'm not, I acknowledge to you that that was, I think, a fact, one of the, one of the two benign informant factors that weigh against us. So, because what the testimony was is that they'd been alerted to that by their shift supervisors when they came on, and that other agents apparently had found this before they had found it, this, these clothes. And so they had continued to pursue that for several hours. But even that, the agents acknowledged, though, when they were testifying, that there was no, no one had seen this vehicle driving south earlier that day. There was no report of this vehicle being suspicious. Agent Lozano, sorry, Agent Benavides testified that she checked the tags before the stop, and she didn't testify about finding any suspicious there. And also, as I said, the agents suspected, from what they had seen in the brush that day, that they were looking for a load of between four to six people. And again, this vehicle had three people in it, which was what Agent Lozano saw. And there was no evidence of it being weighted down or something else that would have suggested that it was carrying more than the three people, which would be totally So, these factors simply don't support reasonable suspicion, as the court has held in those cases I've mentioned. I'll also point out that this, the court talks about, it does because of standards, where it talks about someone ducking, like in the Soto case, which where someone reacting suddenly to police was enough, was largely enough to support reasonable suspicion. But again, there's none of that here. It is merely people in two different places seeing different numbers of people, while driving along at 50 plus miles per hour. So, just like in Rangel-Portillo and Olivares-Pacheco, there's insufficient, there's insufficient evidence that the police had reasonable suspicion that there was any illegal activity going on. And just like there, I ask that the district, that this court vacate the district court's order denying the press. Okay, thank you. You've saved time for rebuttal. Thank you, Your Honor. Now, we'll hear from the appellee, Loretta Barry. It's Barry. Barry for the U.S. May it please the court, Loretta Barry for the United States. The United States does not dispute that this was a very close case, which is exactly what the district court said, and that reasonable suspicion is a very low threshold. What the district court did at the evidentiary hearing is that it listened to all the testimony, but it also asked very pointed questions of the witnesses. Then, it went through a 17-page comprehensive order, going through each and every Brignone-Ponce factor, to settle on three that tip the scales when considered in their laminated total, that tip the scales of reasonable suspicion. The first one was the characteristics of the area. The court credited the testimony of the two agents that Highway 16 and that, and a particular ranch where the clothes were found, was a well-known exit point and a circumvention point of the checkpoint. The court also credited the testimony of the agents about recent illegal activity on that particular ranch. The agents testified that the morning shift, their muster supervisor informed them that agents had been spotted on the ranch and that clothes and discarded backpacks had been found, such that the afternoon shift, which was Benavidez and Lozano, also searched in the area. To no avail, they parked three to five miles north on Highway 16. And lastly, is the behavior of the passengers. Now, Agent Lozano... What was the distance from the ranch to the area where the stop occurred? It was three to five miles, Your Honor. And lastly, is the behavior of the passengers. Now, the government does not dispute that Agent Lozano testified on direct examination that he saw three people and that the third person was playing with their hair. And Agent Benavidez, who was directly behind, only saw two as she passed. Now, the district court came back to that and asked pointed questions about that fact. The district court asked Agent Lozano, I want to talk to you about how you said the person was playing with their hair in the backseat. Was it significant to you that you saw three and that Agent Benavidez only saw two? What is suspicious about someone adjusting their hair? In and of itself, the agent just said it was perhaps someone trying to hide behind their hair. It wasn't really developed, Your Honor. But the district court held that when he asked again if it was significant and why it was significant, the agent testified that either the person was trying to hide behind their hair or avoid being seen. I'm sorry, he did not say hide. He said avoid being seen or perhaps he had been crouching down. He compared it to crouching down. That was in the footnote of the opinion. The court said, well, hiding behind your hair really doesn't avoid being seen. It may avoid being recognized if you have a recognizable face, I guess. But you agree with me that doesn't avoid being seen? I agree with you, Your Honor. The court really focused on the fact that there was an occupant discrepancy. And that in and of itself was the court credited that the occupant discrepancy was the key factor. The court did hold, though, in the footnote of the order that although neither agent testified or wrote in their report that the backseat passenger was quote-unquote hiding, but that the testimony of Lozano was that he believed that maybe the reason that Benavides did not see the third person is because they were attempting to avoid being seen. That is what the footnote was held. So again, throughout the opinion, at least in three places, the district court said that the United States minimally met its burden of reasonable suspicion, which comes directly from the Supreme Court and Socolow. I mean, we've had a lot of cases where people really did hide. And then they were found in some other contexts and so on. But this doesn't sound like you're hiding if you're doing stuff with your hair and all that. The fact that someone didn't see it maybe means they're just driving around. When you're driving, you can't just stare at other people. You need to drive. So I'm just a little bit confused about why it's clear, oh, they're trying to hide when they're sitting up with their hair just because someone doesn't see them. Well, Your Honor, again, the case law says that you don't need to eliminate every single innocent explanation. And so I would refer the court to that. The district court, after listening to all of the testimony and evaluating all the factors, said this is minimally suspicious. It's a very close call. Considering all of the testimony and going through a very rigorous analysis of the witnesses and deferring to the court's credibility findings, even in close call cases, it's something that this court does not do is divide and conquer on all the different factors. But taken together in its totality, the court believed that reasonable suspicion did support this stop. If there are no other factors, in summary, the two bases for reasonable suspicion were clothes found at the ranch and playing with the hair in an effort to avoid being seen. That's it, isn't it? No, no, no. What else do you see? Both the federal public defender and I agree that the characteristics of the area is a factor. That that clearly weighed in favor. That is one of the Bergnoni-Ponce factors. That the ranch itself, where the clothes were found, there's testimony at record 164 and record 217. When you say characteristics of the area, tell me what you're talking about. Okay, so Highway 16, that particular stretch of road, Highway 16 was well known as an exit point to avoid the checkpoint, Your Honor. And there's also testimony that that particular ranch where the clothes were found was a common, that aliens had been commonly found in that area. And you're saying that particular stretch of Highway 16? Yes, Your Honor. It was more than 50 miles from the port. Well, but the particular stretch where they were parked, the three to five miles, and that's, again, record 164 and 217. So that's one thing. Second thing is, of course, the information about recent illegal trafficking. And this was very recent. It was that very morning that the clothes were found. They had been informed that aliens were sighted on the ranch. And then, so that's the second thing. And then the third thing is, of course, the discrepancy in the number of passengers that were seen by the two different agents. If there are no further questions, I respectfully request the judgment be affirmed. Okay, thank you. We'll now hear the rebuttal. Thank you, Your Honor. Just in, Judge Graves had asked about the distance from the ranch to the stop. And it's at page 223 in the record where Agent Lozano, the government characterized it correctly, but Agent Lozano stated it was about three to five miles north of that ranch where they'd been searching. How many miles? Three to five, Your Honor. And so that's in the record of 223. The other thing, the government points out Judge Morales' footnote regarding the behavior of the passenger with the hair. And so that's on page 73 of the record. And to be clear, nothing in there is saying anything about crouching or anything else. Judge Morales is simply relating that the agent testified that the movement, meaning the hands by the head or whatever, seemed as though the passenger was trying to avoid being seen. But there's nothing about crouching or jerking away to avoid detection. None of that is in that footnote or elsewhere. The only time the court mentioned slouching is later when it's going through the background of how the courts have considered behavior of passengers in the past when considering whether reasonable suspicion exists. And it talks about crouching and ducking down and sighting in cases like Soto. But neither of the agents either from the report or in the testimony testified about slouching or such sudden behaviors. And so without that, the remaining factors which you went through, I don't think, again, I think the government and I are not in much disagreement on those, the nature of the general area as well as what the agents knew from that day weakly do weight in favor of the government. But nothing else does. And that is insufficient to stop this particular car when there's no suspicion as to this particular car on this particular day, Your Honor. Again, as I said, we ask the court to reverse the judgment of the district court. Thank you. All right. Thank you both. We appreciate your arguments and we will decide it.